UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AMERICAN TRANSIT INSURANCE COMPANY

Plaintiff,

-against-

ADVANCED COMPREHENSIVE LABORATORY, LLC D/B/A TOPLAB, MARK GLADSTEIN, MD, VICTORIA FRENKEL AND JOHN DOE DEFENDANTS 1 THROUGH 10

Defendants.

21-CV-413

COMPLAINT

JURY TRIAL DEMANDED

American Transit Insurance Company (interchangeably referred to herein as "Plaintiff" and "American Transit), by their attorneys Morrison Mahoney, LLP, for their Complaint against Defendants Advanced Comprehensive Laboratory, L.L.C. d/b/a TopLab ("Advanced Comprehensive"), Mark Gladstein, M.D. ("Gladstein"), Victoria Frenkel ("Frenkel") (Gladstein and Frenkel are referred to collectively as the "Individual Defendants") and John Doe Defendants 1 through 10 (collectively referred to as "Defendants") allege as follows:

**PRELIMINARY STATEMENT**

1. On information and belief, from at least 2017 and continuing through the date of the filing of this Complaint, Defendants engaged in a pervasive scheme to defraud American Transit, through the exploitation of New York's Comprehensive Motor Vehicle Insurance Reparations Act (popularly known as the "No-fault Law").

2. Pursuant to the No-fault Law, policyholders and others who suffer in automobile accidents ("No-fault Claimants") can obtain payments from the policyholders' automobile insurance companies, like American Transit, for necessary medical care ordered by the No-fault Claimants' physicians. No-fault Claimants are also permitted to assign those benefits to doctors

and other licensed healthcare providers, including pharmacies, enabling them to bill insurance companies directly for their services.

3. This action seeks to recover more than $25,000.00 that Defendants stole from American Transit through the submission of thousands of false and/or fraudulent insurance claims, pursuant to the No-fault Law, seeking reimbursement for medically unnecessary urine drug testing (the “Fraudulent Drug Testing”) that was purportedly performed in connection with routine pain management procedures, surgery and anesthesia services, including but not limited to epidural steroid injections and manipulation under anesthesia. In addition, this action seeks a declaration that more than $1,700,000.00 in fraudulent insurance claims that Defendants are attempting to collect from American Transit are not reimbursable because the services purportedly provided with respect thereto were provided pursuant to an illegal kickback scheme without regard for medical necessity, as well as an order permanently enjoining Defendants from collecting or attempting to collect reimbursement from American Transit of the foregoing fraudulent insurance claims.

4. On information and belief, when legitimately used, urine drug testing is performed in order to determine the presence and/or quantity of illegal or prescription drugs in a person’s urine, and is generally not necessary prior to the performance of routine pain management procedures, surgery or anesthesia services.

5. On information and belief, urine drug testing is generally only useful and/or medically necessary in (i) a limited number of cases involving advanced anesthesia where it is necessary to determine if a patient is taking any medications or using any drugs that may have a harmful interaction with the anesthesia services being performed, or (ii) prior to the prescription of a controlled substance (such as opioids) in order to determine of a patient is an appropriate

candidate for opioid treatment, or if any medications or substances being taken would have a negative interaction with the controlled substance.

6. On information and belief, as part of the scheme to defraud alleged herein, Defendants entered into illegal kickback arrangement with No-fault clinics, medical and ambulatory surgery centers in the New York metropolitan area (the "Referring Providers") pursuant to which, in exchange for financial or other compensation, the No-Fault Clinics issued prescriptions for Fraudulent Drug Testing to be performed by Advanced Comprehensive for no other purpose than to allow Advanced Comprehensive to submit fraudulent bills for reimbursement to insurers in general, and American Transit in particular.

7. At all times relevant herein, the prescription forms pursuant to which Advanced Comprehensive purportedly performed the Fraudulent Drug Testing often failed to include the name of the prescribing doctor, date of prescription, or any indication whatsoever as to what drugs should be tested for.

8. On information and belief, at all times relevant herein, Defendants routinely performed medically unnecessary and lucrative Fraudulent Drug Testing pursuant to a predetermined fraudulent protocol and kickback arrangement whereby patients would receive such testing irrespective of need.

9. In virtually each and every instance the No-fault Claimants for which the Fraudulent Drug Testing was performed failed to have any documented history of drug abuse, use of prescription of narcotic medication, or other indications which would warrant the performance of a drug screening.

10. Notwithstanding that No-fault claimants did not have any documented history of drug abuse, use of prescription of narcotic medication, or other indications which would warrant

the performance of a drug screening, as a matter of pattern, practice and protocol, the No-fault claimants were tested by Defendants for a boilerplate menu of sixty-eight (68) separate drugs, including but not limited to analgesics, anticonvulsants, antidepressants, benzodiazepines, synthetics, muscle relaxants, opiates/opioids, synthetic opioids, hypnotics, stimulants and cannabinoid (the "Protocol Drug Screen"), some of which are drugs that are rarely consumed by the general public.

11. On information and belief, with respect to virtually every No-fault Claimant, the Protocol Drug Screen was performed notwithstanding that such a screen was unwarranted and/or not listed or ordered on a prescription form.

12. Demonstrative of the fact that the Fraudulent Drug Testing purportedly performed by Defendants played no legitimate role in the treatment of No-fault Claimants and were medically unnecessary and performed to maximize profits for the Defendants as opposed to aid in the treatment of the No-fault Claimants, in many if not all instances, the results of the Fraudulent Drug Testing were not reported by Advanced Comprehensive to the Referring Providers until days, if not weeks after the related procedures were performed.

13. As a matter of practice and protocol, the results of the Fraudulent Drug Testing were often, if not always omitted from the treatment plan of No-fault Claimants and played no role in their treatment.

14. On information and belief, by entering into kickback arrangements with the Referring Clinics and performing the Fraudulent Drug Testing irrespective of medical necessity, Advanced Comprehensive engaged in conduct which demonstrated a blatant disregard for the laws of New York State and New Jersey, including but not limited to the New York State Public Health Law

15. On information and belief, Defendants Gladstein and Frenkel, through Advanced Comprehensive, fraudulently submitted, or caused to be submitted, bills to American Transit Fraudulent Drug Testing that was provided to No-fault Claimants (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; and (iii) in violation of the laws of New York State and New Jersey, including but not limited to the New York State Public Health Law. By way of example and not limitation, annexed hereto as Exhibit "A" is a spreadsheet listing a representative sample of claims submitted to American Transit by Defendants for Fraudulent Drug Testing that was provided (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (iii) were medically unnecessary and (iv) in violation of New York State and New Jersey, including but not limited to the New York State Public Health Law. Said spreadsheet is grouped by claim number, claimant initials, date of service, and amount billed.

16. On information and belief, in each instance, Defendants knew or should have known that the claims that they submitted to American Transit were bogus and contained material and misleading statements regarding the propriety of the billed-for services.

17. In particular, Defendants knew or should have known that the claims that they submitted to American Transit for Fraudulent Drug Testing were provided: (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (iii) were medically unnecessary and (iv) in violation of New York State and New Jersey, including but not limited to the New York State Public Health Law.

18. The duration, scope and nature of the Defendants' illegal conduct bring this case well within the realm of criminal conduct to which the Racketeering Influenced and Corrupt Organization Act ("RICO") applies. The Defendants adopted a fraudulent blueprint regarding the

performance of urine drug screening as their business plan, and used it to participate in a systematic pattern of racketeering activity. Every facet of Defendants' operations, from the formation of kickback arrangements with the Referring Clinics, the performance of bogus and medically unnecessary urine tests, to record keeping to billing, was carried out for the purpose of committing fraud.

19. This lawsuit seeks to, among other things, enforce the plain language of the No-fault Law and implementing regulations, as well as its underlying public policy, which limits reimbursement of No-fault benefits to legitimate insurance claims. In doing so, Plaintiff seeks compensatory damages and declaratory relief that Plaintiff are not required to pay any of Advanced Comprehensive claims for Fraudulent Drug Testing submitted to Plaintiff for reimbursement because they were provided (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (iii) that were part of a pattern to fraudulently bill for medically unnecessary testing; and (iv) in violation of New York State and New Jersey, including but not limited to the New York State Public Health Law. Plaintiff further seeks injunctive relief preventing Defendants from collecting or attempting to collect reimbursement from American Transit of the foregoing fraudulent insurance claims. All of the claims identified in Exhibit "A" form the basis of Plaintiff's claim for declaratory and injunctive relief.

20. A justiciable controversy exists as Defendants continue to pursue their fraudulent claims in suit and/or arbitration. By way of example and not limitation, annexed hereto as Exhibit "B" is a spreadsheet listing a representative sample of No-fault claims in excess of $957,000 that Defendants are pursuing in arbitration. Said spreadsheet is grouped by claim number, claimant initials, date of service, amount claimed and index number.

## NATURE OF THE ACTION

21. This action is brought pursuant to:

i) The United States Racketeer Influenced and Corrupt Organizations Act ("RICO"); 18 U.S.C. § 1962(c);

ii) New York State Common Law; and

iii) The Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

## NATURE OF RELIEF SOUGHT

22. American Transit seeks treble damages that it sustained as a result of the Defendants' schemes and artifices to defraud, and acts of mail fraud (pursuant to 18 U.S.C. § 1341), in connection with their use of the facilities of the No-fault system and its assignment of benefits mechanism to fraudulently obtain payments from American Transit for Fraudulent Drug Testing that it allegedly performed for individuals covered by American Transit under New York State's No-fault Law.

23. American Transit seeks compensatory and punitive damages under the Common Law.

24. American Transit further seeks recovery of the No-fault claim payments made under the independent theory of unjust enrichment.

25. American Transit further seeks a judgment declaring that it is under no obligation to pay any of Defendants' unpaid No-fault claims for Fraudulent Drug Testing which was performed pursuant to the fraudulent scheme set forth herein, as well as an order permanently enjoining Defendants from collecting or attempting to collect from American Transit reimbursement of the foregoing fraudulent insurance claims.

26. As a result of Defendants' actions alleged herein, American Transit suffered economic injury in the form of payments to Defendants and/or expenses incurred by American Transit as a result of Defendants fraudulently billing American Transit Fraudulent Drug Testing that they knew or should have known were provided (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined fraudulent protocol without regard for medical necessity; and (iii) in violation of New York State and New Jersey, including but not limited to the New York State Public Health Law.

**THE PARTIES**

27. Plaintiff American Transit Insurance Company is a corporation duly organized and existing under the laws of the State of New York, having its principal place of business in Brooklyn, New York.

28. Defendant Advanced Comprehensive, LLC (Advanced Comprehensive) was organized in the State of New Jersey on or about May 12, 2017.

29. On or about April 30, 2019, Advanced Comprehensive filed a Certificate of Alternate Name in the State of New Jersey setting forth that is also does business as "TopLab.

30. On information and belief, Advanced Comprehensive is registered as a foreign limited liability Company in the State of New York on or about January 10, 2020. Advanced Comprehensive is operated, managed, and/or controlled by Defendants Mark Gladstein and Victoria Frenkel, and submitted fraudulent claims to Plaintiff seeking reimbursement urine drug screening under the No-fault Law.

31. Advanced Labs registered as a foreign limited liability company in New York on or about January 10, 2020 with a principal place of business located in Kings County.

32. On information and belief, Advanced Comprehensive purported to perform drug screens on individuals located in New York pursuant to a permit from the New York State Department of Health.

33. Defendant Mark Gladstein, M.D. is a natural person residing in the State of New York, is a listed principal, officer, and/or director of Advanced Comprehensive, and, at all times relevant herein, participated in its operation, management, and/or controlled its activities.

34. Defendant Victoria Frenkel is a natural person residing in the State of New York, is a listed principal, officer, and/or director of Advanced Comprehensive, and, at all times relevant herein, in its operation, management, and/or controlled its activities.

35. Defendants John Does 1 through 20 (the "John Doe Defendants") are individuals who conspired, participated, conducted and assisted in the fraudulent and unlawful conduct alleged herein. These individuals will be added as defendants when their names and the extent of their participation become known through discovery.

## **JURISDICTION AND VENUE**

36. The jurisdiction of the Court arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.; 28 U.S.C. §§ 1331; and principles of pendent jurisdiction.

37. The Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a), the claim for declaratory relief, and the injunctive relief sought based upon 28 U.S.C. § 2201 and § 2202.

38. Venue lies in this District Court under the provisions of 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more the Defendants reside and

because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

**FACTUAL BACKGROUND**

39. American Transit underwrites automobile insurance in New York State and participates as an insurer in New York State's No-fault program.

40. Under the Comprehensive Motor Vehicle Insurance Reparations Act of New York State, Ins. Law §§ 5101, *et seq*., American Transit is required to pay, *inter alia*, for health service expenses that are incurred as a result of injuries suffered by occupants of their insured motor vehicles and pedestrians ("No-fault Claimants") that arise from the use or operation of such motor vehicles in the State of New York.

41. Pursuant to the No-fault Law, Plaintiff are required to pay, *inter alia*, for health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles or pedestrians, which arise from the use or operation of such motor vehicles in the State of New York. Claimants can also assign these benefits to doctors and other properly licensed healthcare providers, including pharmacies, enabling them to bill insurance companies directly for their services.

42. As alleged herein, Defendants exploited and continue to exploit the No-fault Law by performing Fraudulent Drug Testing that, if provided at all, was medically unnecessary and provided pursuant to a fraudulent.

43. On information and belief, Advanced Comprehensive is ostensibly a laboratory that bills for drug screening provided to, among others, individuals covered under the No-fault Law.

44. In exchange for their purported services, Advanced Comprehensive accepted (and continues to accept) assignments of benefits signed by No–fault Claimants and submitted (and continues to submit) claims for payment to No-fault insurance carriers, in general, and to Plaintiff, in particular.

45. In accordance with the No-fault Law and 11 N.Y.C.R.R. §§ 65 *et seq*., Advanced Comprehensive submitted (and continues to submit) bills for their claims to American Transit using the claim form prescribed by the New York State Department of Financial Services ("DFS," f/k/a the Department of Insurance), known as a "Verification of Treatment by Attending Physician or Other Provider of Health Service" or "NYS form NF-3" (hereinafter "NF-3"), or a substantially similar form.

46. Pursuant to Section 403 of the New York State Insurance Law, the claim forms submitted to Plaintiff by the Retailers contained the following warning at the foot of the page:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime….

47. Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Plaintiff were (and are) required to promptly process claims within 30 days of receipt of proof of claim.

48. On information and belief, the Defendants purportedly performed urine drug testing and submitted claims for payment to American Transit for such services.

49. In purported compliance with the No-fault Law and 11 N.Y.C.R.R. 65 et seq., the Defendants submitted proof of their claims to American Transit using a Health Insurance Claim Form 1500 (known as a "HCFA 1500 form") or a substantially similar form.

50. Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, American Transit is required to promptly process claims within 30 days of receipt of the proof of claim.

51. To fulfill its obligation to promptly process claims, American Transit justifiably relied upon the bills and documentation submitted by Defendants in support of their claims for urine drug testing, and paid Defendants based on the representations and information that Defendants submitted to American Transit.

52. At all relevant times Advanced Comprehensive was an illegal enterprise that engaged in systematic and pervasive fraudulent practices.

53. On information and belief, Advanced Comprehensive was part of a racketeering scheme that distinguished it from a legitimate healthcare provider/laboratory:

- Unlike legitimate medical providers, Advanced Comprehensive routinely misrepresented that it was performing medically necessary drug screen testing, when it fact, it knew or should have known that such services were not medically necessary and performed pursuant to pre-determined fraudulent protocol.

- Unlike legitimate medical providers, Advanced Comprehensive routinely misrepresented that it was performing medically necessary drug screen testing, when it fact, it knew or should have known that such testing was performed, if at all, pursuant to illegal kickback and referral scheme irrespective of need.

- Unlike legitimate medical providers, Advanced Comprehensive routinely misrepresented that it was performing medically necessary drug screen testing, when it fact, it knew or should have known that the results of the urine drug testing was never reviewed for their purported intended purpose.

- Unlike legitimate medical providers, Advanced Comprehensive routinely misrepresented that it was performing medically necessary drug screen testing, when it fact, it knew or should have known that the results of the urine drug testing was never incorporated into No-fault Claimants' treatment plans.

- Unlike legitimate medical providers, Advanced Comprehensive routinely misrepresented that it was performing medically necessary drug screen testing, when it fact, it knew or should have known that the results of the urine drug testing played no role in the treatment of No-fault Claimants.

54. In these and numerous other ways, the Defendants sought to deceive American Transit into paying for services which were not provided and/or not provided as billed.

55. On information and belief, Advanced Comprehensive was created for the purpose of participating in the fraudulent billing of insurance companies under the No-fault Law.

56. On information and belief, every aspect of Defendants' fraudulent scheme was motivated by money.

## STATUTORY/REGULATORY SCHEME

57. Section 5108 of the No-fault Law circumscribes the amount that a licensed healthcare provider or other authorized person may recover for health service related expenses. In particular, under this section, such persons are only entitled to reimbursement of necessary medically related expenses in accordance with the applicable fee schedules established by the Chairman of the Workers' Compensation Board and adopted by the Superintendent of the New York State Department of Financial Services.

58. Pursuant to New York State law, a provider of healthcare services is not entitled to reimbursement for No-Fault Benefits if the provider fails to meet any applicable New York state or local licensing requirement necessary to perform such service in New York or meet any applicable licensing requirement necessary to perform such service in any other state in which such service is performed. *See* 11 N.Y.C.R.R. § 65-3.16(a)(12).

59. Pursuant to both New York and New Jersey law, it is illegal for a laboratory such as Advanced Comprehensive to pay for the referral of specimens for drug screening.

60. By way of example and not limitation. pursuant to the New York Public Health Law § 587 "[n]o clinical laboratory or its agent, employee or other fiduciaries shall make, offer, give, or agree to make, offer, or give any payment or other consideration in any form to the extent such payment or other consideration is given for the referral of services or participate in the division, transference, assignment, rebate, splitting of fees, with any health services purveyor, or with another clinical laboratory."

61. By way of further example and not limitation. pursuant to the New York State Department of Health Regulations (10 N.Y.C.R.R. § 34-2.4), "no clinical laboratory, its agent, employee or fiduciary shall make, offer, give, or agree to make, offer or give, any payment or other consideration to a health services purveyor for the referral of specimens for the performance of clinical laboratory services.

62. By way of further example and not limitation, New Jersey Law provides that "No person shall: Either personally, or through an agent, solicit referral of specimens to his or any other clinical laboratory or contract to perform clinical laboratory examinations of specimens in a manner which offers or implies an offer of rebates to a person or persons submitting specimens, other fee-splitting inducements, participation in any fee-splitting arrangements."

63. On information and belief, any provider of healthcare laboratory services that offers, gives, or agrees to make, offer or give, any payment or other consideration to a health services purveyor for the referral of specimens for the performance of clinical laboratory services is in violation of both New York and New Jersey licensing requirements and ineligible to receive the reimbursement of benefits pursuant to the No-fault Law.

**MECHANICS OF THE SCHEME TO DEFRAUD**

64. On information and belief, beginning in 2017 and continuing until the present day, Defendants and others not named in the Complaint have engaged in a systematic fraudulent billing schemes based upon the alleged provision of Fraudulent Drug Testing to No-fault Claimants.

65. On information and belief, the Individual Defendants, through Defendant Advanced Comprehensive, devised and carried out a scheme to fraudulently bill insurers, in general, and Plaintiff, in particular, for Fraudulent Drug Testing which was provided, if at all, based upon a pre-determined treatment protocol, irrespective of medical necessity.

66. In furtherance of the scheme to defraud alleged herein, the Defendants entered into illegal kickback arrangements with, among others, fraudulently owned medical practices and ambulatory surgery centers (the "Referring Providers") located throughout the New York Metropolitan area, including but not limited to neighboring New Jersey. Pursuant to these kickback arrangements, the owners and/or controllers of the Referring Providers caused No-fault Claimants who treated at the Referring Providers to be referred to Advanced Comprehensive for medically unnecessary drug testing for no other purpose than to fraudulently bill insurers in general, and American Transit in particular.

67. By way of example and not limitation and on information and belief, Advanced Comprehensive received referrals for Fraudulent Drug Testing from a group of related ambulatory surgical centers, including but not limited to SCOB, LLC, as well as three related ambulatory surgical centers located in New Jersey which include Excel Surgery Center, LLC, Dynamic Surgery Center, LLC and HeathPlus Surgery Center, LLC (the "Referring Ambulatory Surgical Centers"), each of which were operated in gross violation of the law and for the purpose of

committing No-fault insurance fraud and part of an interrelated network of medical providers, which included Defendant Advanced Comprehensive, that conspired to engage in insurance fraud.

68. By way of example and not limitation, in *American Transit Insurance Company v. Reuven Alon, et al.,* 656455/2018 (Supreme Court of the State of New York, County of New York) (the "State Court Action"), American Transit alleged with specificity how (i) the Ambulatory Surgical Centers received referrals of No-fault Claimants from No-fault providers pursuant to collusive and illegal financial agreements and/or familial relationships, (ii) how each was operated illegally and improperly with the State finding numerous statements of deficiencies, (iii) how each was controlled and managed by a layperson that recruited medical professionals to serve as "medical directors," who completely failed to properly exercise their duties as reflected in the numerous statements of deficiencies from the State and (iv) how the Ambulatory Surgical Centers were operated in unsanitary and unsafe conditions.

69. In particular, the State Court Action sets forth how the Referring Ambulatory Surgical Centers have been the subjects of significant complaints and investigations by the New Jersey Department of Health which has concluded at least ten different times that the Referring Ambulatory Surgical Centers provided services to patients in an unsafe or otherwise noncompliant environment, by among other things: (a) incidents threatening the lives of patients and otherwise demonstrating the Referring Ambulatory Surgical Centers' disregard of the New Jersey Standards for Licensing of Ambulatory Care; (b) violations of sanitation and hygiene regulations as to each facility, its equipment, and its personnel; (c) failure to properly and safely procure, store, use, and dispose of Controlled Dangerous Substances; (d) absence of qualified healthcare professionals from the facilities; (e) failure to properly keep records and report to

regulators regarding emergency situations; and (f) egregious mishandling of sensitive patient information.

70. On information and belief, through the Referring Ambulatory Surgical Centers and other providers with whom Advanced Comprehensive entered into illegal kickback arrangements with, both in New York and New Jersey, Advanced Comprehensive was able to solicit a steady stream of individuals on which to perform the Fraudulent Drug Testing, and in turn, bill American Transit approximately $2,500 for each test performed.

**A. Overview of the Legitimate Use of Drug Testing**

71. On information and belief, urine drug testing is used in order to determine the presence or absence of prescribe drugs or illegal drugs in a person's system, and is generally not medically unless there are indications that patients, based upon their demographic, medical or other factors are at high risk for contraindications due to their consumption of unreported illicit drugs or abuse of prescription drugs.

72. On information and belief, urine drug testing is generally not medically necessary in advance of routine pain management procedures, surgery or anesthesia services such as those for which the Fraudulent Drug Testing was purportedly performed.

73. On information and belief, urine drug testing may be useful in a small number of situations (i) where advanced anesthesia services are involved, and certain patients need to be screened in order to ascertain if they are taking any medications or using any drugs that may have a negative interaction with the anesthesia services, or (ii) prior to the prescription of a controlled substance in order to determine if a patient is abusing illegal drugs, or taking any other medications, in order to ascertain whether such drugs or medication may have a negative interaction with the

prescription of a controlled substance, or if the patient is otherwise unsuitable to be prescribed a controlled substance due to the risk of substance abuse.

74. On information and belief, in those small number of situations where urine drug testing may be useful, such testing is typically performed in two separate phases. First, a screening test (also called a qualitative test) is performed in order to determine if urine tests "positive" for the presence of a particular drug above a certain concentration.

75. On information and belief, when a screening test yields a positive result (indicating the presence of a specific drug above a certain concentration), a healthcare provider may request a more definitive quantitative test, if medically necessary, in order to determine the amount of drug in the urine specimen.

76. On information and belief, quantitative drug testing is more complex and costly than qualitative drug testing because quantitative drug testing produces a precise measurement of the amount of a drug or medication in a person's urine, as opposed to just a positive or negative finding, as produced by qualitative drug testing.

77. On information and belief, in a legitimate setting, the use of quantitative drug testing is generally not medically necessary in the absence of suspected illicit drug use (including as determined by a qualitative test) or unless it is necessary that the quantity of medication or drugs present in a person's system be determined.

78. On information and belief, qualitative drug testing which is performed based upon a pre-determined list of drugs is not medically necessary in advance of routine pain management procedures, surgery or anesthesia services unless there are indications that a patient are at high risk for contraindications due to their use of illegal drugs or medications.

**B. <u>Defendants' Performance of Fraudulent Drug Testing</u>**

79. As part of Defendants' scheme to defraud, Advanced Comprehensive entered into kickback or other financial arrangements with the Referring Providers which, in exchange for financial or other compensation, would utilize prescription forms provided by Advanced Laboratory to refer No-fault Claimants to Advanced Comprehensive for drug screen testing irrespective of medical necessity.

80. On information and belief, the Referring Providers ordered drug screens for virtually every No-fault Claimant that received routine pain management/surgery/anesthesia services through those facilities, regardless of their demographic or risk factors for drug use or ingestion of prescription medication.

81. On information and belief, none of the Fraudulent Drug Testing was performed because No-fault Claimants were receiving advanced anesthesia services, or because the Referring Providers intended to prescribe a controlled substance and needed to ascertain whether No-fault Claimants were taking drugs or medications may have a negative interaction with the prescription of those controlled substance, or if the No-fault Claimant is otherwise unsuitable to be prescribed a controlled substance due to the risk of substance abuse. Rather, the Fraudulent Drug Testing was performed for no other purpose than to steal money from American Transit.

82. On information and belief, as a matter of practice pattern, practice and protocol and in furtherance of the scheme to defraud alleged herein, irrespective of what may have been indicated on any particular prescription form from the Referring Providers, Advanced Laboratory always performed a pre-determined quantitative drug screening for the same sixty-eight (68) separate drugs, some of which are virtually never consumed by the general public.

83. On information and belief, in many instances, the prescription forms purportedly provided by the Referring Providers to Advanced Comprehensive which resulted in Fraudulent Drug Testing were bogus, often failing to include the prescribing doctor's name and/or signature, date prescribed, or any indication of what type of drug screen should be provided. Instead, because the same protocol testing for the same sixty-eight (68) (the "Protocol Drug Screen") was utilized pursuant to the illicit kickback arrangements, Advanced Comprehensive performed that protocol screen irrespective of the lack of specific information contained on the bogus prescription forms. By way of example and not limitation:

- In connection with Claimant F.R. (Claim No. 1083842-02), the prescription form purportedly provided to Advanced Laboratory by Medical Office of Brooklyn with respect to a drug screen purportedly performed on July 13, 2020, failed to include the name or signature of the prescribing doctor, the date ordered, any indication of which of the seventy-one (71) drugs listed on the form should be screened for, or that Advanced Laboratory should "Screen All." Notwithstanding the foregoing, Advanced Laboratory purported to screen for their set protocol of sixty-eight (68) drugs, and billed American Transit $2,492.88 for such purported testing. A redacted copy of the aforementioned prescription form and related bill is annexed hereto as Exhibit "C."

  In connection with Claimant J.P. (Claim No. 1077318-03) the prescription form purportedly provided to Advanced Laboratory by Medical Office of Brooklyn with respect to a drug screen purportedly performed on January 31, 2020, failed to include the name of the prescribing doctor, date ordered any indication of which of the seventy-one (71) drugs listed on the form should be screened for, or that Advanced Laboratory should "Screen All." Notwithstanding the foregoing, Advanced Laboratory purported to screen for their set protocol of sixty-eight (68) drugs, and billed American Transit $2,711.83 for such purported testing. A redacted copy of the aforementioned prescription form and related bill is annexed hereto as Exhibit "D."

- In connection Claimant J.F. (Claim No. 108342.02), the prescription form purportedly provided to Advanced Laboratory by Medical Office of Brooklyn with respect to a drug screen purportedly performed on July 13, 2020, failed to include the name, or signature of the prescribing doctor, any indication of which of the seventy-one (71) drugs listed on the form should be screened for, or that Advanced Laboratory should "Screen All." Notwithstanding the foregoing, Advanced Laboratory purported to screen

for their set protocol of sixty-eight (68) drugs, and billed American Transit $2492.88 for such purported testing. A redacted copy of the aforementioned prescription form and related bill is annexed hereto as Exhibit "E."

84. On information and belief, Advanced Comprehensive performed the Protocol Drug Screen in absence of legitimate prescriptions because at all times relevant herein, Advanced Laboratory knew of should have known that the Fraudulent Drug Testing was medically unnecessary and being performed on No-fault Claimants regardless of medical necessity and in furtherance of a fraudulent kickback scheme.

85. On information and belief, putting aside that the Fraudulent Drug Testing was medically unnecessary and often provided pursuant to patently incomplete and bogus prescriptions, the results of the Fraudulent Drug Testing, to the extent such testing was performed at all, were often purportedly reported by Advanced Laboratory to the Referring providers days, or even weeks after the services for which the drug screens were obtained were performed. By way of example and not limitation:

- On or about July 20, 2018, a urine drug screen at Advanced Comprehensive Laboratory for Claimant C.S.Y. (Claim No. 1019663-01) was prescribed by Health Plus Surgery Center, LLC, and collected on that same day, in connection with a right knee arthroscopy which was purportedly performed on that same day. The results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until July 30, 2016, ten days after the aforementioned right knee arthroscopy was allegedly performed. With respect to this drug screen, Defendant Advanced Comprehensive billed American Transit $2,783.22.
- On or about May 17, 2019, a urine drug screen at Advanced Comprehensive Laboratory for Claimant D.M. (Claim No. 1019663-01) was prescribed by Health Plus Surgery Center, LLC in connection with a lumbar epidural injection which was purportedly performed on that same day. The purported urine sample was not received by Advanced Comprehensive until May 19, 2019, two days after the aforementioned lumbar epidural injection was allegedly performed, and the results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until May 21, 2019, four days after the aforementioned lumbar epidural injection was allegedly performed. With respect to this drug screen, Defendant Advanced Comprehensive billed American Transit $2,803.13.

- On or about April 18, 2018, a urine drug screen at Advanced Comprehensive for Claimant J.D. (Claim No. 1012290-2) was prescribed by Interstate Multi Specialty Group, P.C. in connection with a lumbar epidural injection which was purportedly performed on that same day. The purported urine sample was not received by Advanced Comprehensive until April 20 2018, two days after the aforementioned lumbar epidural injection was allegedly performed, and the results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until April 27, 2019, nine days after the aforementioned lumbar epidural injection was allegedly performed. With respect to this drug screen, Defendant Advanced Comprehensive billed American Transit $2,492.88.
- On or about July 6, 2018, a urine drug screen at Advanced Comprehensive for Claimant M.A. (Claim No. 1021498-01) was prescribed by Health Plus Surgery Center, LLC in connection with a lumbar epidural injection which was purportedly performed on that same day. The results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until July 11, 2018, five days after the aforementioned lumbar epidural injection was allegedly performed. With respect to this drug screen, Defendant Advanced Comprehensive billed American Transit $2,783.22.
- On or about January 21, 2020, a urine drug screen at Advanced Comprehensive for Claimant T.C. (Claim No. 1071464-01) was prescribed by Hackensack Specialty ASC, LLC in connection with a lumbar block injection which was purportedly performed on that same day. The results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until January 23, 2020 two days after the aforementioned lumbar block injection was allegedly performed. With respect to this drug screen, Defendant Advanced Comprehensive billed American Transit $2,711.83.
- On or about March 7, 2020, a urine drug screen at Advanced Comprehensive for Claimant S.M. (Claim No. 107146-01) was prescribed by SCOB, LLC in connection with manipulation under anesthesia which was purportedly performed on that same day. The purported urine sample was not received by Advanced Comprehensive until March 9, 2020, two days after the aforementioned manipulation under anesthesia was allegedly performed, and the results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until March 10, 2020, three days after the aforementioned manipulation under anesthesia was allegedly performed. With respect to this drug screen, Defendant Advanced Comprehensive billed American Transit $2,783.22.

86. On information and belief, in many instances, No-fault Claimants were given multiple drug screenings over short periods of time, notwithstanding that initial tests came back

negative for drug use which would interfere with their treatment, and/or that drug screening was not medically necessary in the first instance. By way of example and not limitation:

- On or about May 11, 2020, a urine drug screen at Advanced Comprehensive for Claimant Y.G. (Claim No. 1083842-01) was prescribed by Medical Office of Brooklyn in connection with a routine pain management procedure which was purportedly performed on that same day. The purported urine sample was not received by Defendant Advanced Comprehensive until May 13, 2020, <u>two days after</u> the aforementioned routine pain management procedure was allegedly performed, and the results of this drug screen were not reported by Defendant Advanced Comprehensive until June 13, 2020, almost one month later. Approximately three days after the report of the first drug screen, on or about June 16, 2020, a <u>second</u> drug screen at Advanced Comprehensive for Claimant Y.G. was prescribed by Medical Office of Brooklyn in connection with a routine pain management procedure which was purportedly performed on that same day. As with the first drug screens, the purported urine sample associated with this second drug screen was not received by Defendant Advanced Comprehensive until June 17, 2020, <u>one day after</u> the related procedure was purportedly performed, and the results were not reported by Defendant Advanced Comprehensive until June 18, 2020, <u>two days after</u> the related procedure was purportedly performed. In connection with these two drug screens, Defendant Advanced Comprehensive billed American Transit $5,566.44.

- On or about May 6, 2020, a drug screen Advanced Comprehensive for Claimant E.P. (Claim No, 1083234-02) was prescribed by Medical Office of Brooklyn on in connection with a routine pain management procedure which was purportedly performed on that same day. The purported urine sample was not received by Defendant Advanced Comprehensive until May, 7, 2020, <u>one day after</u> the related procedure was purportedly performed, and the results were not reported by Defendant Advanced Comprehensive until May 13, 2002, <u>seven days after</u> the related procedure was purportedly performed. On or about June 22, 2020 a second drug screen Advanced Comprehensive for Claimant E.P. was prescribed by Surgicare of Brooklyn in connection with a routine pain management procedure which was purportedly performed on that same day. As with the first drug screen, the purported urine sample associated with this second drug screen was not received by Defendant Advanced Comprehensive until June 23, 2020, <u>one day after</u> the related procedure was purportedly performed, and the results were not reported by Defendant Advanced Comprehensive until June 24, 2020, <u>two days after</u> the related procedure was purportedly performed. On August 3, 2020, a <u>third</u> urine drug screen at Advanced Comprehensive for Claimant E.P. was prescribed by Medical Office of Brooklyn in connection with a routine pain management procedure which was purportedly

performed on that same day. The purported urine sample was not received by Defendant Advanced Comprehensive until August 4, 2020, one day after the aforementioned routine pain management procedure was allegedly performed, and the results were not reported by Defendant Advanced Comprehensive until August 11, 2020, seven days after the related procedure was purportedly performed. In connection with these three drug screens, Defendant Advanced Comprehensive billed American Transit $7,916.54.

- On or about July 31, 2018, a urine drug screen at Advanced Comprehensive for Claimant D.F. (Claim No. 1016671-04) was prescribed by Health Plus Surgery Center, LLC, and collected on that same day, in connection with a lumbar epidural injection which was purportedly performed on that same day. The results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until August 7, 2018, seven days after the aforementioned lumbar epidural injection was allegedly performed. Approximately four (4) weeks later, on or about September 11, 2018, another urine drug screen at Advanced Comprehensive for Claimant D.F. (Claim No. 1016671-04) was prescribed by Dynamic Health Surgery Center, LLC, and collected on that same day, in connection with a lumbar epidural injection which was purportedly performed on that same day. The results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until September 14, 2018, three days after the aforementioned lumbar epidural injection was allegedly performed. In connection with these two drug screens, Defendant Advanced Comprehensive billed American Transit $5,566.44.

- On or about April 22, 2018, a urine drug screen at Advanced Comprehensive for Claimant D.S. (Claim No. 1001803-03) was prescribed by Dynamic Health Surgery Center, LLC in connection with a lumbar epidural injection which was purportedly performed on that same day. The purported urine sample was not received by Advanced Comprehensive until April 23, 2018, one day after the aforementioned lumbar epidural injection was allegedly performed, and the results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until April 27, 2019, five days after the aforementioned lumbar epidural injection was allegedly performed. Approximately five (5) weeks later, on or about June 3, 2018, another urine drug screen at Advanced Comprehensive for Claimant D.S. (Claim No. 1001803-03) was prescribed by Dynamic Health Surgery Center, LLC in connection with a cervical epidural injection which was purportedly performed on that same day. The results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until June 13, 2018, ten days after the aforementioned cervical epidural injection was allegedly performed. In connection with these two drug screens, Defendant Advanced Comprehensive billed American Transit $5,566.44.

- On or about January 18, 2020, a urine drug screen at Advanced Comprehensive for Claimant L.N. (Claim No. 1071722-01) was prescribed by Hackensack Specialty ASC, LLC in connection with manipulation under anesthesia which was purportedly performed on that same day. The results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until January 21, 2020, <u>three days after</u> the aforementioned manipulation under anesthesia was allegedly performed. Approximately, one (1) week later, on or about February 1, 2020, another urine drug screen at Advanced Comprehensive for Claimant L.N. (Claim No. 1071722-01) was prescribed by Integrated Specialty ASC, LLC in connection with manipulation under anesthesia which was purportedly performed on that same day. The results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until February 5, 2020, <u>four days after</u> the aforementioned manipulation under anesthesia was allegedly performed. In connection with this drug screen, Defendant Advanced Comprehensive billed American Transit another $2,711.83. In connection with these two drug screens, Defendant Advanced Comprehensive billed American Transit $5,423.66.

- On or about June 29, 2018, a urine drug screen at Advanced Comprehensive for F.N. (Claim No. 1019994-01) was prescribed by Health Plus Surgery Center, LLC in connection with a knee orthoscopy which was purportedly performed on that same day. The results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until July 9, 2018, <u>ten days after</u> the aforementioned knee orthoscopy was allegedly performed. Approximately, six (6) weeks later, on or about August 10, 2018, another urine drug screen at Advanced Comprehensive for Claimant L.N. was prescribed by Health Plus Surgery Center, LLC in connection with a knee orthoscopy which was purportedly performed on that same day. The results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until August 15, 2020, <u>five days after</u> the aforementioned knee arthroscopy was allegedly performed. In connection with these two drug screens, Defendant Advanced Comprehensive billed American Transit $5,276.10.

- On or about May 6, 2018, a urine drug screen at Advanced Comprehensive for G.B. (Claim No. 10579-03) was prescribed by Dynamic Surgery Center, LLC in connection with a nerve block which was purportedly performed on that same day. The purported urine sample was not received by Advanced Comprehensive until May 7, 2018, <u>one day after</u> the nerve block was allegedly performed and the results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until May 9, 2018, <u>three days after</u> the aforementioned nerve block was allegedly performed. Approximately three (3) weeks later, on or about June 1, 2018, another urine drug screen at Advanced Comprehensive for Claimant L.N. was prescribed by Dynamic Surgery Center, LLC in connection with a nerve block which

> was purportedly performed on that same day. The results of the foregoing drug screen were not reported by Defendant Advanced Comprehensive until June 13, 2018, twelve days after the aforementioned nerve block was allegedly performed. In connection with these two drug screens, Defendant Advanced Comprehensive billed American Transit $5,566.44.

87. On information and belief, in many instances and in order to maximize their reimbursement, Defendants performed routinely *both* qualitative and quantitative drug screening on No-fault Claimants at the same time, with the quantitative testing often being performed notwithstanding that the qualitative testing yielded negative results.

## DISCOVERY OF THE FRAUD

88. Based upon Defendants' material misrepresentations and other affirmative acts to conceal their fraud from American Transit, American Transit did not discover and should not have reasonably discovered that its damages were attributable to fraud until shortly before they filed this Complaint.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF

## AGAINST GLADSTEIN AND FRENKEL

## (RICO, pursuant to 18 U.S.C § 1962(c))

89. The allegations of paragraphs 1 through 88 are hereby repeated and re-alleged as though fully set forth herein

## THE RICO ENTERPRISE

90. From in or about 2017 through the date of the filing of this Complaint, Defendants Gladstein and Frenkel conducted and participated in the affairs of the Advanced Comprehensive enterprise through a pattern of racketeering activity, including the many acts of mail fraud

described herein and in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

91. At all relevant times mentioned herein, Defendants Gladstein and Frenkel participated in the affairs of the Advanced Comprehensive enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted fraudulent bills and supporting documents to Plaintiff that were based, in part, on the performance of Fraudulent Drug Testing (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; and (ii) in violation of New York and New Jersey state laws.

92. The racketeering acts set forth herein were carried out on a continued basis over more than a 3 year period, were related and similar, and were committed as part of Defendants Gladstein and Frenkel's ongoing scheme to fraudulently perform medically unnecessary drug testing to defraud insurers and, if not stopped, will continue into the future.

93. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Advanced Comprehensive, continues to pursue collection on the fraudulent billing to the present day.

94. As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Gladstein and Frenkel caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud American Transit Insurance Company and to induce it to issue checks to the Advanced Comprehensive enterprise based upon materially false and misleading information.

95. Through the Advanced Comprehensive enterprise, Defendants Gladstein and Frenkel submitted fraudulent claim forms seeking payment for urine drug testing that was performed: (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; and (ii) in violation of the laws of New York State and New Jersey, including but not limited to the New York State Public Health Law.. By virtue of those activities, Defendants Gladstein and Frenkel engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Advanced Comprehensive, Inc. enterprise through the filing of this Complaint.

96. A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by or on behalf of Defendants Gladstein and Frenkel in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

97. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

98. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

99. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property in an amount in excess of $25,000, the exact amount to be determined at trial.

100. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover, from Defendants Gladstein and Frenkel three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys’ fees.

**SECOND CLAIM FOR RELIEF**

**AGAINST ALL DEFENDANTS**

(Common Law Fraud)

101. The allegations of paragraphs 1 through 88 are hereby repeated and re-alleged as though fully set forth herein.

102. Defendants Advanced Comprehensive, Gladstein and Frenkel intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiff, made numerous false and misleading statements of material fact as to the necessity the Fraudulent Drug Testing which they allegedly provided, thereby inducing Plaintiff to make payments to Defendants that Defendants were not entitled to because of their fraudulent nature. As part of the fraudulent scheme implemented by Defendants Gladstein and Frenkel, Advanced Comprehensive made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff for payment.

103. Defendants Advanced Comprehensive, Gladstein and Frenkel intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiff, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the performance of Fraudulent Drug Testing, were misrepresented.

104. Defendants Advanced Comprehensive, Gladstein and Frenkel intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiff, concealed the fact that the Fraudulent Drug Testing which they purportedly provided was provided (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; and (iii) in violation of New York and New Jersey state laws.

105. Defendants Advanced Comprehensive, Gladstein and Frenkel intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive

Plaintiff, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Plaintiff, as opposed to medical necessity.

106. On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted, or caused to be submitted to Plaintiff, medical and laboratory records, assignments of benefits, prescriptions, treatment verifications and/or bills for drug screening which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements that Advanced Comprehensive was performing medically necessary drug screen testing, when it fact, it knew or should have known that such services were not medically necessary and performed pursuant to pre-determined fraudulent protocol.

- False and misleading statements that Advanced Comprehensive was performing medically necessary drug screen testing, when it fact, it knew or should have known that such testing was performed, if at all, pursuant to illegal kickback and referral scheme irrespective of need.

- False and misleading statements that Advanced Comprehensive performing medically necessary drug screen testing, when it fact, it knew or should have known that the results of the urine drug testing was never reviewed for their purported intended purpose.

- False and misleading statements that Advanced Comprehensive was performing medically necessary drug screen testing, when it fact, it knew or should have known that the results of the urine drug testing was never incorporated into No-fault Claimants' treatment plans.

- False and misleading statements that Advanced Comprehensive was performing medically necessary drug screen testing, when it fact, it knew or should have known that the results of the urine drug testing played no role in the treatment of No-fault Claimants.

107. The foregoing was intended to deceive and mislead Plaintiff into believing that Defendants Gladstein and Frenkel, through Advanced Comprehensive, were providing medically valid drug screening when in fact, they were not.

108. Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

109. Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which it was led to believe existed as a result of Defendants' acts of fraud and deception.

110. Had Plaintiff known of the fraudulent content of, and misrepresentations in documentation and bills, it would not have paid Advanced Comprehensive's claims for No-fault insurance benefits submitted in connection therewith or made efforts to verify Defendants' fraudulent claims.

111. Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

112. By reason of the foregoing, Plaintiff has sustained compensatory damages and been injured in their business and property in excess of $25,000, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**THIRD CLAIM FOR RELIEF**

**AGAINST ALL DEFENDANTS**

**(Unjust Enrichment)**

113. The allegations of paragraphs 1 through 88 are hereby repeated and re-alleged as though fully set forth herein.

114. By reason of their wrongdoing, Defendants Advanced Comprehensive, Inc. Gladstein and Frenkel have been unjustly enriched, in that they have, directly and/or indirectly, received monies from Plaintiff that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

115. Plaintiff is therefore entitled to restitution from Defendants Advanced Comprehensive, Gladstein and Frenkel in the amount by which Defendants have been unjustly enriched.

116. By reason of the foregoing, Plaintiff has sustained compensatory damages in excess of $25,000 and been injured in their business and property in an amount as yet to be determined, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

**FOURTH CLAIM FOR RELIEF**

**AGAINST ADVANCED COMPREHENSIVE, INC.**

**(Declaratory Judgment under 28 U.S.C. § 2201)**

117. The allegations of paragraphs 1 through 88 are hereby repeated and re-alleged as though fully set forth herein.

118. At all relevant times mentioned herein, each and every bill mailed by Advanced Comprehensive to Plaintiff sought reimbursement for Fraudulent Drug Testing that was performed

(i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; and (iii) in violation of New York and New Jersey State laws.

119. Because Advanced Comprehensive has engaged in the conduct alleged herein, Plaintiff seeks a declaration that it is not required to pay any of Advanced Comprehensive's claims for Fraudulent Drug Testing that performed pursuant to the scheme to defraud alleged herein.

120. Plaintiff has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**

**AGAINST ADVANCED COMPREHENSIVE, INC.**

**(Permanent Injunction)**

121. The allegations of paragraphs 1 through 88 are hereby repeated and re-alleged as though fully set forth herein.

122. At all relevant times mentioned herein, each and every bill mailed by Advanced Comprehensive to Plaintiff sought reimbursement for Fraudulent Drug Testing that was performed (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; and (iii) in violation of New York and New Jersey State laws.

123. Because Advanced Comprehensive has engaged in the conduct alleged herein, Plaintiff seeks permanent injunctive relief precluding Advanced Comprehensive from collecting or attempting to collect, from Plaintiff, reimbursement of claims for Fraudulent Drug Testing that was performed pursuant to the scheme to defraud alleged herein.

124. Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm the public at large, as well as Plaintiff.

125. Plaintiff has no adequate remedy at law.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury.

**WHEREFORE,** American Transit demands judgment as follows:

i) Compensatory damages, the exact amount to be determined at trial, together with prejudgment interest;

ii) Punitive damages in such amount as the Court deems just;

iii) Treble damages, costs and reasonable attorneys' fees on the First Claim for Relief, together with prejudgment interest;

iv) Compensatory and punitive damages on the Second Claim for Relief, together with prejudgment interest;

v) Compensatory and punitive damages on the Third Claim for Relief, together with prejudgment interest;

vi) Declaratory relief on the Fourth Claim for Relief declaring that American Transit has no obligation to pay any of Defendants' unpaid claims for Fraudulent Drug Testing, whether pending, previously-denied and/or submitted, regardless of whether such unpaid claims were ever denied;

vii) Permanent injunctive relief on the Fifth Claim for Relief precluding Defendants from collecting or attempting to collect from American Transit on any of Defendants' unpaid claims for Fraudulent Drug Testing;

viii) Costs, reasonable attorneys' fees and such other relief that the Court deems just and proper.

Dated: New York, New York,
January 25, 2021

Morrison Mahoney, LLP

By: ______________________
Daniel S. Marvin
Robert A. Stern
Attorneys for American Transit Insurance Company